```
                IN THE UNITED STATES DISTRICT COURT
               FOR THE NORTHERN DISTRICT OF ILLINOIS
                          EASTERN DIVISION

VICTOR SANTANA,                 )
                                )
          Plaintiff,            )
                                )
     v.                         )    No.  09 C 5027
                                )
COOK COUNTY BOARD OF REVIEW,    )
et al.,                         )
                                )
          Defendants.           )
```

MEMORANDUM OPINION AND ORDER

Victor Santana ("Santana") has sued (1) the Cook County Board of Review (the "Board"), (2) its Commissioners Larry Rogers ("Rogers"), Joseph Berrios ("Berrios") and Brendan Houlihan ("Houlihan")(collectively "Commissioners") and (3) Board employees Scott Guetzow ("Guetzow"), Thomas Jaconetty ("Jaconetty") and John Sullivan ("Sullivan")(collectively "Board Employees"), seeking damages under 42 U.S.C. §1983 ("Section 1983") and the Racketeering Influenced and Corrupt Organizations Act ("RICO," 18 U.S.C. §§1961 to 1968). Santana's charges have undergone several metamorphoses as flaws have been identified by defense counsel and by questions from this Court--at this juncture they have morphed into the Fourth Amended Complaint (the "4AC").

This memorandum opinion and order addresses the motion to be dismissed from the 4AC brought by Commissioners and Board Employees (collectively the "Individual Defendants") and by Board

itself.[1]  For the reasons stated below, the motion is granted and this action is dismissed.

## Rule 12(b)(6) Standard

Under Rule 12(b)(6) a party may move for dismissal of a complaint on the ground of "failure to state a claim upon which relief can be granted."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 562-63 (2007) was the first case to repudiate, as overly broad, the half-century-old Rule 12(b)(6) formulation announced in Conley v. Gibson, 355 U.S. 41, 45-46 (1957) "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  And post-Twombly cases have further reshaped a new Rule 12(b)(6) standard.

First Twombly, 550 U.S. at 570 held that to survive a Rule 12(b)(6) motion a complaint must provide "only enough facts to state a claim to relief that is plausible on its face."  Or put otherwise, "[f]actual allegations must be enough to raise a right of relief above the speculative level" (id. at 555).  Then Erickson v. Pardus, 551 U.S. 89 (2007)(per curiam) and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009) provided further Supreme Court enlightenment on the issue.

---

[1] This opinion identifies defendants' original supporting memorandum as "D. Mem.," Santana's responsive memorandum as "S. Mem." and defendants' reply memorandum as "D. R. Mem."

Before <u>Iqbal</u> our own Court of Appeals, in <u>Airborne Beepers & Video, Inc. v. AT&T Mobility LLC</u>, 499 F.3d 663, 667 (7th Cir. 2007) described <u>Twombly</u> and <u>Erickson</u> as establishing "only that at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." And more recently <u>Brooks v. Ross</u>, 578 F.3d 574, 581 (7th Cir. 2009) has confirmed that the <u>Airborne Beepers</u> reading of pleading law post-<u>Twombly</u> and post-<u>Erickson</u> remains accurate after <u>Iqbal</u>. <u>Brooks</u>, id. describes <u>Iqbal</u> as "admonishing those plaintiffs who merely parrot the statutory language of the claims that they are pleading (something that anyone can do, regardless of what may be prompting the lawsuit), rather than providing some specific facts to ground those legal claims, that they must do more."

Familiar Rule 12(b)(6) principles--still operative under the new pleading regime--require this Court to accept as true all of Santana's well-pleaded factual allegations, with all reasonable inferences drawn in his favor (<u>Christensen v. County of Boone</u>, 483 F.3d 454, 457 (7th Cir. 2007)(per curiam)). What follows in the next section adheres to those principles.

**Factual Background**

This Court has previously ruled on motions to dismiss that targeted an earlier incarnation of Santana's charges (700 F.Supp.2d 1023 (N.D. Ill. 2010)). That opinion contains most of

3

the relevant factual background (id. at 1028). This opinion therefore focuses on the relevant factual differences contained in the 4AC.

Santana, a former Board employee, has been working since then as a government and real estate consultant (¶¶12, 14, 16).[2] In his capacity as a consultant Santana has helped taxpayers fill out Board appeals forms for reductions in their property taxes and has assisted taxpayers in other property tax matters, but at no time has he appeared on behalf of any taxpayers at Board hearings (¶¶15-16).

In May 2009 Fox News ran a story on TV describing the influence that State Representative Paul Froehlich ("Froehlich") allegedly had with the Board (¶22). Fox News followed up with a story, based on information given to it by defendants, describing Santana's involvement with Froehlich (¶25).

On May 4, 2009 Commissioners discussed the relationship among Froehlich, Santana and the Board in closed session (Transcript of the May 4, 2009 Board Meeting ["Tr."] at 24-26, 30-31 and 45-53).[3] In that respect Commissioners discussed the

---

[2] Citations to the 4AC will simply take the form "¶--."

[3] This Court received that transcript at its request and has taken judicial notice of its contents. Santana objects to defendants' citation to the transcript (S. Mem. 15) even while citing the same materials later in his own memorandum (S. Mem. 19). In all events, the transcript's content is properly considered by this Court (Ray v. City of Chi., 629 F.3d 660, 665 (7th Cir. 2011)).

4

role that they believed Santana played in bringing appeals to Board offices.

Because appeals challenging real estate tax bills are often handled by the taxpayers themselves without legal assistance, Commissioners hold outreach events throughout Cook County, often with other elected officials (Tr. 45-53). During those outreach events Board employees collect appeal papers where possible, but they often leave additional appeal forms for local elected officials to distribute to their constituents (id.). Such elected officials also often help their constituents fill out those forms and return them to Board's outreach office (id.).

In their discussion of Santana's role in that process, some Commissioners indicated that he sometimes returns such forms to Board's outreach office after the forms are filled out by individual taxpayers and are left at their local elected officials' offices (Tr. 45-53). Commissioners also hypothesized that instead of dropping such forms off at Board's outreach office, Santana may them off with specific Board staff members (id.).

Commissioners discussed possible actions in response to the Fox News reports, and initially they seriously considered banning Santana from the building entirely (Tr. 25-26). Upon further consideration, however, and because at least one Commissioner believed such a full ban would be illegal (Tr. 144-45),

5

Commissioners voted in public session--as the Illinois Open Meetings Act requires for such formal action--on a much more limited restriction. Santana alleges that in the public session Commissioners voted on a motion that segregated and red-flagged the appeals of his "clients" (¶27), but Commissioners' action actually reads this way (Tr. 153):

> Motion 7 brought by Commissioner Houlihan to permanently bar Victor Santana from the Board of Review private offices and to require that the Board of Review employees notify a deputy commissioner of any files that Mr. Santana attempts to file and to set those appeals aside for inspection and review by the Deputy Commissioners.

Santana alleges that Motion 7 resulted in the segregation of files associated with his clients, damaged his reputation and made it impossible for him to continue as a real estate consultant (¶¶27, 39).

### First and Fourteenth Amendment Claims[4]

**Procedural Due Process**

Santana first alleges that Board's segregation of his clients' files violates his Fourteenth Amendment due process rights (S. Mem. 9-17). To survive a motion to dismiss on that

---

[4] Although Santana calls upon both the First and Fourteenth Amendments as providing grounds for relief, that common usage is of course inaccurate--the former literally applies only to the federal government, so that it is the judicial incorporation of its guaranties to apply to state actors via the Fourteenth Amendment that brings those guaranties into play in a case such as this. But because the technically imprecise usage is so universal--and convenient to boot--this Court (like all others) employs it in the analysis here.

6

theory, Santana must allege a plausible deprivation of a cognizable liberty or property interest without due process (Khan v. Bland, 630 F.3d 519, 527 (7th Cir. 2010)).

Santana claims he suffered a deprivation of both a property and liberty interest (S. Mem. 9-14). In characterizing the relevant deprivation, Santana argues that he "has been deprived the right to pursue the profession of his choice" (S. Mem. 11). Such a deprivation cannot be considered a deprivation of a property interest. To claim a property interest a person "must have more than a unilateral expectation of [the claimed interest.] He must, instead, have a legitimate claim of entitlement to it" (Khan, 630 F.3d at 527, quoting Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972), with brackets in Khan original). Such an entitlement must be established by a statute or regulation that delimits the scope and condition of the right (id.) But Santana provides no evidence of such an entitlement. More specifically, there can be no such entitlement where, as here, an employee is employed at will by a private employer and individual clients (see Omosegbon v. Wells, 335 F.3d 668, 674-75 (7th Cir. 2003)).

Santana also contends that he has been deprived of a liberty interest, but he falls short on that score as well. Reputational harm alone is not enough--instead the caselaw teaches that "the alteration of his legal status warrants procedural due process

7

under the 'stigma plus' framework" (Brown v. City of Mich. City, Ind., 462 F.3d 720, 729-30 (7th Cir. 2006)). To set out a "stigma plus" injury with the Twombly-Iqbal-required plausibility, a plaintiff must plead a "serious impairment of his future employment opportunities," Siegert v. Gilley, 500 U.S. 226, 234 (1991), such as being "put out of business" (Khan, 630 F.3d at 534). Here Santana seeks to call such a stigma plus liberty interest into play by pleading that Board's action "destroyed" his ability to work as a consultant (¶47).

That allegation states the deprivation of a liberty interest in facial terms, but the question remains whether Santana has done so plausibly. That question clearly gets a negative answer: As the ensuing analysis demonstrates, it is simply implausible that Board's decision--one that bars Santana from its private offices and subjects to additional scrutiny the taxpayer files that he attempts to deliver--significantly impairs his future employment or puts him out of business.

Board's action does not prevent Santana from doing anything needed to perform his described occupation of "consultant." From the information provided to this Court to make the necessary determination as to plausibility, the only time that Santana would have occasion to drop off files at Board would be the result of his work with elected officials, not in his capacity as a real estate consultant for individual taxpayers. And that is

8

scarcely surprising, for the input for this Court's consideration reveals that Santana's core function as a real estate consultant is to perform calculations and help prepare forms. Indeed, even if Santana dropped off such appeals for individual taxpayers or their attorneys, he has not explained how such messenger-like activities would be essential to his substantive job performance as a consultant. Further, Santana provides no explanation of how Board could "red-flag" his clients' files when there is no reason suggested as to why Santana's name would ever be on an individual file.

Additionally, the harm that Santana alleges as a result of potential clients learning about Board's action is even more attenuated and implausible. For such harm to exist, all or almost all of Santana's current and prospective clients would have to find out about Board's action from a once-aired Fox News story (or perhaps through a hypothetical grapevine) and would then have to decide not to hire him despite the fact that the underlying Board action did not bar him from performing any of his core functions.

Finally, to credit any allegation that Santana could no longer pursue his chosen profession, this Court would have to find it plausible that Santana could not eliminate the asserted prospective damage to his business by such readily available means, for example as doing his underlying substantive work and

9

having the relevant files submitted by the individual client or an attorney or one of his colleagues. Although this Court has sought to avoid being overly aggressive in applying the Twombly-Iqbal plausibility analysis,[5] a chain of events this long with so many weak links is a prime candidate for finding a lack of plausibility. For this reason, the motion to dismiss Santana's Count I claim is granted.[6]

**Free Speech and Association**

Santana also invokes Section 1983 to claim the limitation of his free speech and association rights under the First Amendment. That claim has two aspects, the first of which requires only brief discussion, while the second involves more extended analysis.

---

[5] In fact, this Court's earlier opinion on motions to dismiss (700 F.Supp.2d at 1030-31) had found Santana's then-asserted due process claim plausible. But as stated at the outset of this opinion, Santana's allegations have undergone chameleon-like changes in coloration over time. In particular, he no longer alleges (as he originally did--and wrongly so) that he was completely banned from Board's premises or that Individual Defendants informed clients or potential clients of his issues with Board. Without those two factual allegations, it is no longer plausible that current or potential clients (other than people who might have viewed the Fox News' airing) would have found out about Santana's problems and, perhaps more importantly and even as to hypothetical Fox News viewers, that he would not be able to find a way to continue operating his business.

[6] Count II of the 4AC alleges a Section 1983 conspiracy to deprive Santana of his reputation (¶¶51-66). Both sides agree that if there is no viable underlying procedural due process count, then Count II is no longer viable. For that reason Count II is also dismissed.

First, Santana alleges a limitation of his right to petition the government for redress of grievances (¶68), a right protected by the First Amendment (United Mine Workers of Am., Dist. 12 v. Ill. State Bar Ass'n, 389 U.S. 217, 222 (1967)). Board's May 4, 2009 Motion 7, quoted earlier, banned Santana only from Board's private offices, a ban that would not prevent Santana from appearing before Board in public session to petition on his own behalf. Hence Santana does not sufficiently allege a limitation of his right to petition the government for redress of grievances.[7]

Second, Santana alleges that defendants retaliated against him for exercising his First Amendment right to free association (¶68). To present a successful First Amendment retaliation claim, a plaintiff must sufficiently allege (1) engagement in protected activity and (2) adverse conduct by defendants that is (3) at least partially motivated by the plaintiff's engagement in the protected activity (Bivens v. Trent, 591 F.3d 555, 559 (7th Cir. 2010)).

---

[7] Santana also asserts that his "advice about how to fill out a real estate assessed valuation form" is protected speech under the First Amendment (¶72). However, nowhere in the 4AC does he allege that defendants were even partially motivated to retaliate against him based on his advice about how to fill out those forms, so that this opinion need not reach the question whether those forms are protected speech. Thus, for the reasons stated above, Santana's Section 1983 claim for the limitation of his free speech and association rights under the First Amendment is dismissed.

11

As to the first of those elements, Santana has sufficiently alleged protected activity, pointing first to defendants having targeted his right to free association with Representative Froehlich. With the First Amendment having confirmed "the right of the people peaceably to assemble," the courts have construed that right as embracing the right of free association, protecting the "pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends" (Roberts v. United States Jaycees, 468 U.S. 609, 622 (1984)).

Defendants counter by contending that Santana's association with Froehlich is not protected because it is social and non-expressive (D. R. Mem. 10). To that end they seek to rely on Swank v. Smart, 898 F.2d 1247, 1250-51 (7th Cir. 1990) and City of Dallas v. Stanglin, 490 U.S. 19, 25 (1989), but those cases deal with informal social interactions that are very different from Santana's relationship with Froehlich. For example, Board members discussed Santana's work on Froehlich's campaign in voicing their concern over the relationship between Santana and Froehlich (Tr. 25-26).

Santana also alleges that Commissioners retaliated against him for his choice not to contribute to their campaigns (¶35). Campaign contributions have long been recognized as a form of protected political expression because they demonstrate support for a particular candidate (see, e.g., Buckley v. Valeo, 424 U.S.

12

1, 20-21 (1976)(per curiam)). Hence a refusal to contribute funds to Commissioners' campaigns is protected by the First Amendment.

Defendants further argue that Santana must allege sufficiently that they "'knew' of the claimed protected speech or affiliation" and that he has not done so (D. Mem. 12). But as already stated, Board's private deliberations make it clear that Commissioners were aware of Santana's relationship with Froehlich.

Despite the inadequacy of those objections to Santana's position, he still fails on his retaliation claim because he does not sufficiently allege that public officials engaged in "adverse conduct," a requirement that asks whether Santana "suffered a deprivation that would likely deter First Amendment activity in the future" (Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009)).

On that score Santana has alleged that defendants segregated any files that he was believed to have worked on and that they engaged in a "campaign of character assassination" (¶¶26-27). Neither the first of those assertions nor the purely conclusory second one satisfies the plausibility standard as to "adverse conduct" in that sense--the necessary element of harm to Santana. Consequently his retaliation claims also do not survive the motion to dismiss.

13

**Equal Protection**

Santana also asserts a violation of his Fourteenth Amendment equal protection rights. Because Santana argues that those rights have been violated under a class-of-one theory, he must demonstrate (1) intentional differential treatment from others similarly situated (2) that lacks a rational basis or results from an illegitimate animus toward him (Schor v. City of Chi., 576 F.3d 775, 779 (7th Cir. 2009)). Santana attempts to state such a claim by alleging that Board singled out his activities as distinct from other consultants' identical conduct (¶79).

In particular Santana contends that because the second prong of the test is disjunctive, he need demonstrate only that Board's decision was without rational basis (S. Mem. 22).[8] Although that contention is sound, he has flunked the test he thus set for himself. Srail v. Vill. of Lisle, 588 F.3d 940, 946 (7th Cir. 2009)(internal quotation marks and citations omitted) articulates the demanding hurdle he has failed to surmount:

> A state or municipal statute survives rational basis scrutiny if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose. This is an onerous test to overcome, as the burden is upon the challenging party to eliminate any reasonably conceivable state of facts that could provide a rational basis for the classification.

It is plain that Santana has not plausibly met that burden.

---

[8] There is no assertion of an illegitimate animus in either the 4AC or Santana's responsive memorandum.

It was clearly rational, under the circumstances, for Board to take the relatively modest actions of (1) banning Santana from Board's <u>private</u> <u>offices</u> and (2) creating a specific procedure for any appeals that Santana brought to Board's office. Those measures responded to the need to distance Board from the appearance of corruption without preventing Santana from doing anything that he was legally entitled to do or harming his business interests in any plausible sense. Santana's equal protection claim is therefore dismissed as well.

**RICO**

In addition to his failed Section 1983 claim, Santana seeks to allege a federal RICO claim. This Court has already been around the block more than once on that issue. First, in response to defendants' prior motion to dismiss this Court dismissed Santana's RICO count (700 F.Supp.2d at 1034-35). Santana then filed a motion for leave to file a proposed amended complaint to replead his RICO count (Dkt. 29). After briefing by both sides, this Court issued an October 6, 2010 written opinion (270 F.R.D. 388) that denied defendants' motions that had targeted the proposed amended complaint (Dkt. 87-88). Defendants now reassert the same arguments on which they lost the last time around (D. Mem. 17-25).[6]

---

[6] In fact, as Santana rightly points out, defendants have literally copied and pasted their previous submission with only cosmetic alterations (S. Mem. 27-30). While defendants have thus

15

Santana's most recent effort, the 4AC, confirms this Court's earlier conclusion that he has sufficiently pleaded the predicate acts underlying his RICO count. But the 4 AC's newly-articulated facts make a difference because they bear on the equally critical issue of Santana's claimed harm.

To establish the proximate cause required to allege an injury cognizable in a civil RICO claim, a plaintiff must allege "some direct relation between the injury asserted and the injurious conduct alleged. A link that is too remote, purely contingent, or indirect is insufficient" (Hemi Group, LLC v. City of N.Y., 130 S.Ct. 983, 989 (2010)(internal quotation marks and citation omitted)). Here one of the alleged underlying racketeering acts is the extortion of Santana by Berrios (¶104(a)). Santana asserts that because he refused Berrios' attempts at extortion, he was retaliated against in the form of the relevant Board action (¶109).

While defendants focus on whether or not the alleged injury is too remote from the racketeering activities (D. Mem. 24-25), this Court finds a more basic problem: No plausible injury has been alleged that fits the statutory requirement. RICO §1964(c) allows recovery by "[a]ny person injured in business or property," so that plaintiffs are precluded from recovering for

---

done nothing to adjust their submission to any new factual pleadings, this opinion now considers defendants' submission in light of those new factual allegations as well.

personal injuries or related losses (Evans v. City of Chi., 434 F.3d 916, 925 (7th Cir. 2006)).

Here, to the extent that Santana alleges any plausible injury at all, it is a personal one. As already explained in the context of Santana's Section 1983 claim, Board's action was in response to his informal delivery of appeals, messenger-type conduct that (to the extent that it was appropriate to begin with) was hardly necessary to the conduct of his business as a consultant. With Santana's Section 1983 contentions having failed for similar reasons, his RICO claim falls victim to the same fate.

## Conclusion

With no plausible claim having been alleged by Santana after his fifth effort to do so, the figurative severance of the 4AC and cauterization of the fatal wound, both accomplished by this opinion, have to preclude any hydra-like effort by his counsel to grow still another head through a fifth amended complaint. Enough is enough. Defendants are entitled to a judgment as a matter of law on all of Santana's claims. Their Rule 12(b)(6) motion is granted, and this action is dismissed with prejudice.

_____
Milton I. Shadur
Senior United States District Judge

Date: April 25, 2011